Hoyt E. HENDERSON, et al.,
Plaintiffs,

v.

Allen V. CROOM, et al., Defendants.

Civ. A. No. 74-G-53-J

United States District Court,
N. D. Alabama.
Jasper Division.

Jan. 23, 1975.

See also, D.C., 403 F.Supp. 665.

Thomas E. Skinner, George D. H. McMillan, Jr., and Benjamin B. Spratling, III, Birmingham, Ala., for plaintiffs.

Black & Crotty, Edgar M. Dunn, Jr., Daytona Beach, Fla., John H. Wilbur and D. D. Allen, Milam, Martin & Ade,

Jacksonville, Fla., Warren B. Lightfoot, Bradley, Arant, Rose & White, Birmingham, Ala., for Sun Bank of Daytona Beach.

A. Berkowitz and Michael L. Edwards, Berkowitz, Lefkovits & Patrick, Birmingham, Ala., Joseph L. Hutner, Singer & Pincus, New York City, for Rodano and Stroud, and for Petrol Industries, Inc.

Lang & Suttle, Woodland Hills, Cal., Ollie L. Blan, Jr., Spain, Gillon, Riley, Tate & Ansley, Birmingham, Ala., for Charles Cannon and for Coastal Mechanical, Inc.

W. Michael Atchison and Steve A. Baccus, McDaniel, Hall, Parsons & Conerly, Birmingham, Ala., James E. Moore, Moore, Moore, Downing & Layden, Mobile, Ala., for Allen V. Croom and for Sovereign Industries.

George R. Stuart, III, Hardin, Stuart & Moncus, Birmingham, Ala., Graham & Markel, P. A., Orlando, Fla., R. Edward Cooley, Graham & Markel, P. A., Winter Park, Fla., for Sentry Indemnity Co.

## OPINION AND ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

GUIN, District Judge.

### STATEMENT OF CASE

The plaintiffs charge the defendants with a conspiracy to defraud them in connection with the sale of their stock in Coastal United Enterprises, Inc., a Florida corporation ("Coastal"), in violation of the Securities Act of 1934 and Rule 10b–5 adopted pursuant thereto. [15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5] The Complaint contains six counts. The plaintiffs have filed a Motion for Partial Summary Judgment under Count III. That Count alleges in substance that at the time the plaintiffs were in control of Coastal, it had bid on a construction job for the United States Navy which required Coastal to give a performance bond. To enable Coastal to secure the required bond, the plaintiffs Moss and Deese, with others, executed a General Indemnity Agreement in favor of Sentry Indemnity Company, a Wisconsin corporation ("Sentry"), on April 13, 1972. That Agreement provided in substance that the plaintiffs, with others executing it, would indemnify Sentry if Coastal defaulted on its performance bonds. The plaintiffs allege that the General Indemnity Agreement was executed to cover the Navy construction job only; and that Sentry's General Agent, Gaines, represented to the plaintiffs Moss and Deese that if Coastal were not awarded the job, the General Indemnity Agreement would not be used and would be returned to the plaintiffs. Shortly after Coastal was not awarded the job, plaintiffs Moss and Deese allege that they made demand upon Gaines, as General Agent for Sentry, to return the General Indemnity Agreement. Plaintiffs allege that in connection with the execution of the General Indemnity Agreement, plaintiff Deese wrote a letter to Sentry's General Agent, Gaines, in which he stated "that no individual bonds be released under this indemnity agreement without the written consent of all three parties, named herein as individual guarantee parties." The Complaint charges that in furtherance of the conspiracy and continuing fraudulent plan and scheme to defraud the plaintiffs in connection with the purchase of the plaintiffs' stock, the defendants used the said General Indemnity Agreement for jobs other than the Navy job, resulting in losses on bonds totaling approximately $455,000. Sentry counterclaims that plaintiffs Moss and Deese are liable to it under the General Indemnity Agreement for the losses sustained by it in the execution of performance bonds for Coastal. The plaintiffs seek to have this Court enter a Partial Summary Judgment decreeing that the plaintiffs Moss and Deese are not liable to defendant Sentry under the General Indemnity Agreement for bonds written by Sentry for Coastal.

## FINDING OF FACTS

The Court finds that the plaintiffs Moss and Deese executed the General Indemnity Agreement of April 13, 1972, and that it was delivered to Sentry's General Agent, Gaines, with a written request not to release any bonds thereunder without the written consent of the parties thereto. The Court further finds that Coastal was not awarded the Navy construction job, and it is undisputed that before any bonds were issued by Sentry in behalf of Coastal, the plaintiffs requested the return of the General Indemnity Agreement.

The Court further finds that the General Indemnity Agreement was retained by Sentry's General Agent, Gaines, until after default by Coastal; that sometime in July, 1973, when Sentry was investigating the issuance of the bonds on Coastal's behalf, Gaines admitted that he had retained the General Indemnity Agreement and the bonds written for Coastal. Gaines further admitted that he had paid kickbacks to Najarko, bond underwriter for Sentry, to obtain the first bond for Coastal. The Court finds that at all times pertinent, Gaines was acting within the line and scope of his employment.

The Court finds that prior to the issuance of any bonds by Sentry in behalf of Coastal, the plaintiffs Moss and Deese had surrendered their stock in Coastal and had resigned as officers and directors of Coastal; they no longer exercised or undertook to exercise any control over the conduct of the business of Coastal and had no authority and did not undertake to exercise any authority in connection with the financial affairs of the company.

The Court further finds that Paragraph 12 of the General Indemnity Agreement requires the issuance of a letter, telegram or written application signed by one of those who executed the General Indemnity Agreement as authority for Sentry to execute a bond thereunder. The Court finds that no such letter, telegram or written application was ever given to Sentry by any of those executing the General Indemnity Agreement. The Court finds that bonds were issued by Sentry for Coastal without the written consent of plaintiffs Moss and Deese and after the plaintiffs had requested the return of the General Indemnity Agreement. The Court further finds that the facilities of interstate commerce were used by one or more of the co-conspirators.

## CONCLUSION OF LAW

The Court is of the opinion that the requirements of Paragraph 12 are mandatory; that even if the requirements were permissive, under the circumstances of this case, they are to be construed against Sentry inasmuch as the form contract was prepared by Sentry and was a contract of adhesion. *Halliburton Oil Well Cementing Co. v. Paulk*, 180 F.2d 79 (5th Cir. 1950).

The General Indemnity Agreement is executory in nature. It contemplates that Sentry will issue a performance bond if application is made for such bond. Under such circumstances, the law requires that Sentry give notice to the plaintiffs Moss and Deese of any bonds Sentry might write on Coastal's behalf. This was not done. 42 C.J.S. *Indemnity* § 15 pp. 592–593. Contemporaneously with the execution of the General Indemnity Agreement, plaintiff Deese wrote Sentry requesting that no bonds be written without the written consent of the parties who signed the General Indemnity Agreement. In equity and in good conscience, Sentry was obligated to give such notice to the plaintiffs. The refusal of Sentry's General Agent, Gaines, to return the General Indemnity Agreement when requested by the plaintiffs and its subsequent use constituted a fraud on plaintiffs.

Sentry cannot now take advantage of the fraud of its general agent. It is axiomatic in the law that no man may take advantage of his own wrong. It is equally well established in the law that the principal is liable for the fraud

of his agent acting within the actual or apparent scope of his employment, even though the fraud was committed solely for the agent's own benefit and to the principal's detriment. This principle is stated again and again in the cases by the textbook writers, and it has been codified in the *Restatement* (Second), Agency, § 261, as a settled principle of law.

> "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

The textbook writers are in full accord with this statement of the law.

> "The principal is responsible for his agent's fraud or misrepresentation even though he may have personally received no benefits therefrom, and it is of no consequence that the agent acts entirely for his own purposes and commits a fraud solely for his own benefit, if it is within the actual or apparent scope of his employment." 37 Am.Jur.2d, *Fraud and Deceit*, § 314, p. 415; 3 Am.Jur.2d, *Agency*, § 267, p. 631.

> "As differently stated, the principal is responsible for the fraud of his agent if he has intrusted to the agent a matter which puts him in a position to perpetrate the fraud complained of while the agent is negotiating a transaction within the scope of his employment." 3 C.J.S. *Agency* § 427, p. 290.

The General Indemnity Agreement was executory in nature. No term for its duration was stated. Under the law, it was terminable at the will of either party.

> "A contract of indemnity continues in force only during such time as is expressly or impliedly provided for in the contract, and if no time is fixed for its duration, it is a contract terminable at the will of either party." 41 Am.Jur.2d, *Indemnity*, § 8, p. 693.

The Court is of the opinion that when the plaintiffs requested the return of the General Indemnity Agreement before any liability was incurred thereunder, this terminated the General Indemnity Agreement. Sentry cannot as a matter of law maintain its action against the plaintiffs. *Fulgham v. Town of Selma*, 238 N.C. 100, 76 S.E.2d 368 (1953). See also, *Employers Mutual Casualty Co. v. Piedmont Supply Co.*, 197 F.Supp. 159, 168 (D.C. N.C.1961).

## ORDER

The Court is of the opinion that the plaintiffs Moss and Deese are entitled to have a Partial Summary Judgment entered adjudging and decreeing that they are not liable to Sentry for bonds written for Coastal United Enterprises, Inc. under the General Indemnity Agreement executed on April 13, 1972. It is, therefore, ordered, adjudged and decreed that,

The plaintiffs Moss and Deese are not liable to Sentry for bonds written for Coastal United Enterprises, Inc. under the General Indemnity Agreement executed by the plaintiffs and others on April 13, 1972.